UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| JEFFREY STENGLER, a Texas resident, and KERRI STENGLER, an Illinois resident,<br><br>Plaintiffs,<br><br>v.<br><br>HARBOR FREIGHT TOOLS USA, INC., a California corporation,<br><br>Defendant. | § § § § § § § § § § § § § | CIVIL ACTION NO. _____<br><br><br><br>JURY DEMAND |

## PLAINTIFFS' ORIGINAL COMPLAINT

1. Jeffrey Stengler ad Kerri Stengler, Plaintiffs, bring the following claims against Defendant and respectfully state:

### PARTIES

2. Plaintiff, Jeffrey Stengler, is a Texas resident who resides in Jefferson, Texas, which is his true, fixed, and permanent home.

3. Plaintiff, Kerri Stengler, is an Illinois resident who resides in St. Charles, Illinois, which is her true, fixed, and permanent home.

4. Defendant, Harbor Freight Tools USA, Inc. ("Harbor Freight"), is a corporation incorporated in the state of Delaware with its principal place of business located at 26677 Agoura Road, Calabasas, California 91302, which is registered to do business in Texas. Harbor Freight is and, at all relevant times, was doing business in the State of Texas by selling and distributing miter saws through a chain of distribution which sold many thousands of miter saws in Texas, including the miter saw involved in the subject occurrence. This Defendant can be served via its registered agent, Corporate Creations Network Inc., 5444 Westheimer #1000, Houston, Texas 77056.

## JURISDICTION AND VENUE

5. This Court has jurisdiction pursuant to 28 U.S.C. §1332(a). Plaintiff Jeff Stengler's true, fixed, and permanent home is in Jefferson, Texas. Plaintiff Kerri Stengler's true, fixed, and permanent home is in St. Charles, Illinois. Therefore, Plaintiffs are citizens of Texas and Illinois. Defendant is a corporation incorporated in Delaware and has its principal place of business in California, and is, thus, a citizen of Delaware and California. Therefore, as Plaintiffs are citizens of Texas and Illinois, and Defendant is a citizen of Delaware and California, complete diversity exists. Further, Plaintiffs seek damages in excess of $75,000.

6. Venue is proper in this judicial district pursuant to 13 U.S.C. §1391, *et seq.*, because all or a substantial part of the events giving rise to the subject claims occurred within this District.

7. Venue is proper and convenient in this Division of the Eastern District of Texas because the subject miter saw was marketed and sold in Harrison County, Texas, which is within this District and Division. Further, the subject incident occurred in Jefferson, Texas, which is near to this Division's courthouse. The two witnesses who assisted Mr. Stengler immediately after the accident also reside in Jefferson, Texas. Further, Mr. Stengler was treated at Christus Good Shepherd Medical Center and UT Health Tyler shortly after the accident, where he received extensive treatment for his injuries. Good Shepherd Medical Center is near to this Court in Longview, Texas, and UT Health Tyler is near to this Court in Tyler, Texas. These treating medical providers will be important witnesses at the trial of this matter. Therefore, the residents of this District and Division have a significant interest in the outcome of this case.

8. Defendant is subject to specific jurisdiction in this Court because it has purposefully availed itself of the privilege of doing business in Texas by targeting the subject model miter saw for sale in Texas, including within this District and Division. *Ford Motor Co. v. Montana Eighth*

*Judicial Dist. Court*, 141 S. Ct. 1017 (2021). The subject miter saw reached Texas while in the stream of commerce and caused injury to Plaintiffs in Texas. Harbor Freight also engaged in a marketing and distribution campaign targeting citizens of Texas, this District, and this Division for advertisements promoting the sale and use of the subject model miter saw in Texas. Harbor Freight, through its retail locations, created a system for sales, warranty service, and other customer support in Texas which further targeted Texas as a market for the subject miter saw. Through all of these activities, and other similar related activities, Defendant purposefully availed itself of the right to do business in Texas. The subject claims arise from or relate to the Defendant's efforts to target Texas. Specific jurisdiction is proper over the Defendant in Texas.

## FACTS

9. On May 18, 2024, Jeffrey Stengler ("Stengler") purchased an Admiral 12-inch dual-bevel sliding compound miter saw (the "Miter Saw") from a Harbor Freight retail store located in Marshall, Texas. The subject Miter Saw was designed, manufactured, and marketed by Harbor Freight.

10. The Miter Saw is designed and manufactured to cut a wide range of materials, including fascia board.

11. The Miter Saw is designed and manufactured with a plastic blade guard.

12. When the Miter Saw is in use, the blade guard is designed to protect users from contacting the Miter Saw's saw blade.

13. The Miter Saw and accompanying blade guard are designed in such a way that, when the Miter Saw's handle is lowered by the user, the blade guard should raise automatically, thus exposing the saw blade and allowing the saw blade to contact the material the user intends to cut.

14. The Miter Saw and accompanying blade guard are designed in such a way that, when the Miter Saw's handle is raised by the user, the blade guard should automatically return to its safety position, thus covering the saw blade and protecting the user from unintentionally contacting the Miter Saw's saw blade.

15. On May 19, 2024, Stengler was using the Miter Saw in a reasonably foreseeable manner and for its intended purpose: to cut fascia board.

16. While using the Miter Saw on May 19, 2024, Mr. Stengler was following all instructions and was adhering to all safety precautions for the proper and safe use of the Miter Saw.

17. After cutting a piece of fascia board with the Miter Saw, Mr. Stengler raised the Miter Saw's handle.

18. Unbeknownst to Mr. Stengler, however, the Miter Saw's blade guard did not automatically return to its safety position and did not cover the Miter Saw's blade as designed.

19. As Mr. Stengler loaded another piece of fascia board into the Miter Saw's cutting area, Mr. Stengler's hand contacted the Miter Saw's saw blade.

20. Mr. Stengler suffered injuries and damages because of his hand making contact with the Miter Saw's saw blade.

**DESIGN DEFECT CAUSE OF ACTION AGAINST
HARBOR FREIGHT TOOLS USA, INC.**

21. Plaintiffs adopt and re-allege each paragraph set forth above.

22. At all times material to this action, Defendant Harbor Freight was in the business of designing, testing, engineering, manufacturing, marketing, distributing, selling, and supplying miter saws for use in Texas and throughout the United States.

23. Harbor Freight established the design and manufacturing processes for the manufacture of the subject model Miter Saw. The subject Miter Saw was defectively designed and is unreasonably dangerous and defective because it was not equipped with flesh-detection technology, flesh-sensing technology, or braking technology, which would have stopped the Miter Saw's saw blade upon contacting human skin. Moreover, the subject Miter Saw was defectively designed and is unreasonably dangerous and defective because it was not equipped with adequate guarding technology, which would have prevented the Miter Saw's saw blade from contacting the body of the user. These conditions rendered the subject Miter Saw unreasonably dangerous and defective.

24. It was entirely foreseeable and well known to Harbor Freight that accidents and incidents such as occurred herein would, on occasion, take place in the ordinary and foreseeable use of the subject model Miter Saw.

25. Safer alternative designs were technologically and economically feasible at the time the subject Miter Saw was manufactured which, if adopted, would have substantially reduced the likelihood of Mr. Stengler's serious and permanent injuries and would have significantly increased the safety provided by the subject Miter Saw.

26. The foregoing design defect(s) were a producing and/or proximate cause of Plaintiffs' injuries and damages.

### MANUFACTURING DEFECT CAUSE OF ACTION AGAINST HARBOR FREIGHT TOOLS USA, INC.

27. Plaintiffs adopt and re-allege each paragraph set forth above.

28. At all times material to this action, Defendant Harbor Freight was in the business of designing, testing, engineering, manufacturing, marketing, distributing, selling, and supplying miter saws for use in Texas and throughout the United States.

29. Harbor Freight established the intended output and manufacturing quality standards for the subject model Miter Saw. The subject Miter Saw and/or blade guard deviated from its intended output and design performance standards because it failed to automatically return to the safety position as designed and failed to cover the Miter Saw's saw blade as designed. Further, the subject Miter Saw was defectively manufactured because it deviated from the intended design and performance specifications in a manner that rendered the product unreasonably dangerous. These manufacturing defects existed at the time the Miter Saw left its manufacturer and in the final assembled Miter Saw at the time it was sold. These conditions rendered the subject Miter Saw unreasonably dangerous and defective.

30. The manufacturing defect(s) described above were a producing cause of the damages alleged herein.

## NEGLIGENCE CAUSE OF ACTION AGAINST HARBOR FREIGHT USA, INC.

31. Plaintiffs adopt and re-allege each paragraph set forth above as if fully set forth herein.

32. Harbor Freight had a duty to exercise reasonable care in the design, manufacture, assembly, testing, distribution, and marketing of the subject Miter Saw. Moreover, Harbor Freight had a duty to adopt adequate quality control measures to ensure the subject Miter Saw was not unreasonably dangerous for its foreseeable use.

33. Harbor Freight breached its duty and was negligent when it designed and manufactured the subject Miter Saw. The subject Miter Saw and/or blade guard was improperly designed and manufactured. Harbor Freight breached its duty and was negligent when it designed, manufactured, and supplied the subject Miter Saw.

34. Harbor Freight knew, or, in the exercise of reasonable care should have known, that the subject Miter Saw and/or blade guard was improperly designed and manufactured which would create an unreasonable risk of harm for those persons likely to use the Miter Saw for the purpose and in the manner for which it was intended to be used. Defendant's failure to adequately plan, test, design, and manufacture the subject Miter Saw to prevent injuries such as the one made the subject of this suit was negligent.

35. Defendant's negligent acts and omissions were a proximate cause of Plaintiffs' injuries and resulting damages.

### GROSS NEGLIGENCE CAUSE OF ACTION AGAINST HARBOR FREIGHT TOOLS USA, INC.

36. Plaintiffs adopt and re-allege each paragraph set forth above as if fully set forth herein.

37. Harbor Freight's conduct complained of above constitutes gross negligence. Harbor Freight's conduct, when viewed objectively from the standpoint of the actor at the time of its occurrence, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others. Harbor Freight's conduct constitutes willful and wanton disregard for the rights and safety of users, including Plaintiffs.

38. Further, Harbor Freight, by and through its employees and agents, had actual, subjective awareness of the risks to users of a defectively designed and manufactured miter saw but proceeded with conscious indifference to the rights, safety, or welfare of such users, including Plaintiffs.

## DAMAGES

39. Plaintiffs adopt and re-allege each paragraph set forth above as if fully set forth herein.

40. Plaintiff Jeffrey Stengler suffered severe and permanent injuries for which he seeks damages, including:

   a. Medical expenses in the past and future;

   b. Physical pain and mental anguish in the past and future;

   c. Physical impairment in the past and future;

   d. Disfigurement in the past and future;

   e. Loss of consortium;

   f. Loss of household services;

   g. Pecuniary loss, including medical expenses, in the past and future; and,

   h. Lost earning capacity in the past and future.

41. As a direct and proximate result of the occurrence made the basis of this suit, Mrs. Stengler was caused to suffer loss of consortium and loss of household services.

41. Plaintiffs, additionally, seek exemplary damages associated with the gross negligence claims set forth herein.

42. Defendant's negligent acts, omissions, and product defects were the producing and/or proximate cause of these actual damages to Plaintiffs.

## CLAIM FOR PREJUDGMENT AND POST-JUDGMENT INTEREST

43. Plaintiffs herein claim interest at the maximum legal rate.

## JURY DEMAND AND PRAYER

44. Plaintiffs request that a jury be convened to try the factual issues of this case.

45. Plaintiffs pray that judgment be entered in their favor against Defendant for all damages, as requested herein, the costs of bringing this action, for prejudgment and post-judgment interest at the maximum legal rate, and for such other relief, at law or in equity, to which they may be justly entitled.

Respectfully submitted,

*/s/ Jeffrey T. Embry*
Jeffrey T. Embry
State Bar No. 24002052
Margaret C. Pennell
State Bar No. 24116893
**HOSSLEY & EMBRY, LLP**
515 S. Vine Ave.
Tyler, Texas 75702
Telephone No. 903-526-1772
Telecopier No. 903-526-1773
jeff@hossleyembry.com
meg@hossleyembry.com

Matt Montgomery
State Bar No. 24041509
**HOSSLEY & EMBRY, LLP**
14241 Dallas Pkwy, Suite 240
Dallas, Texas 75254
Telephone No. 214-390-2349
matt@hossleyembry.com

**ATTORNEYS FOR PLAINTIFFS**